UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

UNITED STATES OF AMERICA, upon relation )
and for the use of the TENNESSEE VALLEY )
AUTHORITY, )
)
    Plaintiff, )
)
v. )    No. 2:24-CV-00176-DCLC-CRW
)
AN EASEMENT AND RIGHT-OF-WAY OVER )
7.58 ACRES OF LAND, MORE OR LESS, AND )
ADDITIONAL RIGHTS WITH RESPECT TO )
AN EXISTING EASEMENT AND RIGHT-OF- )
WAY OVER LAND IN SULLIVAN COUNTY, )
TENNESSEE, et al., )
)
    Defendants. )

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff the United States of America's Motion for

Review of Nondispositive Order of Magistrate Judge Denying Plaintiff's Motion to Exclude

Opinion Testimony of Defendant's Retained Appraiser James C. McSpadden [Doc. 53], the

United States's Memorandum in Support [Doc. 54], Defendants William Chadwick Baker and

Paige Baker's Response [Doc. 56], and the United States's Reply [Doc. 58]. For the reasons

herein, the Court will **SUSTAIN IN PART** the United States's objection. The magistrate judge's

opinion permitted the inclusion of post-taking damages and to that extent it was a clear error of

law.

I.    **BACKGROUND**

William and Paige Baker own about 190.48 acres of property in Sullivan County,

Tennessee. [Stipulations, Doc. 23, at 1]. In 1969, the United States, for the use and benefit of

the Tennessee Valley Authority ("TVA"), obtained a transmission-line easement over 12.42

acres of the property. [*Id.* at 2]. More than five decades later, in 2024, the United States, under its power of eminent domain,[1] brought this action to condemn an additional easement over the Bakers' property. [Compl., Doc. 1]. Specifically, the United States condemned (1) a permanent easement and right-of-way over 7.58 acres of the property and (2) additional rights affecting 2.49 acres within the existing 1969 easement. [Doc. 23, Stipulations at 2].

The United States acquired these easement rights for the use and benefit of TVA to permit "the erection, operation, and maintenance of electric power transmission circuits and communication circuits." [Compl. at 1]. This project is part of TVA's "Sullivan–South Bristol transmission line" project in the Bristol area of Sullivan County. [Doc. 23, Stipulations at 2]. The parties have stipulated to the following aerial map of the Bakers' property and the United States's easements on their property:



_____

[1] Eminent domain is the United States's sovereign power to take private property for public use without a landowner's consent. *PennEast Pipeline Co., LLC v. New Jersey*, 594 U.S. 482, 487 (2021). The TVA has the power to exercise the right of eminent domain in the United States's name, 16 U.S.C. § 831c(h), though the Fifth Amendment requires the TVA to provide the landowner with "just compensation," *Kirby Forest Indus., Inc. v. United States*, 467 U.S. 1, 9–10 (1984); *see Brown v. Legal Found. of Wash.*, 538 U.S. 216, 233 (2003) ("When the government physically takes possession of an interest in property for some public purpose, it has a categorical duty to compensate the former owner[.]" (quotation omitted)).

2

[Doc. 23, Stipulations at 2]. Tract Number SUB-57 corresponds to the 1969 easement, and Tract Number SBS-94 corresponds to the 2024 easement. [*Id.*].

Upon filing this condemnation action, the United States submitted a declaration of taking and deposited $47,800.00 with the Court as its estimate of just compensation. [Pl.'s Decl. of Taking, Doc. 1-3, at 2]. The sole dispute is whether that amount constitutes just compensation.

To estimate just compensation, the Bakers retained James C. McSpadden, a licensed appraiser in Tennessee. Mr. McSpadden opined that the property's before-taking value was $4,561,400 [Doc. 31-2, pg. 32]. In reaching this figure, he divided the property into two units: (1) a 156.14-acre agricultural unit and (2) a 34.34-acre unit improved with a residence. Neither of these units correspond with deeds or tax map parcels. In delineating the 34.34-acre unit, he simply "followed the tree line." [Doc. 33, pg. 6]. Mr. McSpadden then applied a modified comparable sales approach, assigning a value of $10,000 per acre to the agricultural unit and valuing the residential unit at $3,000,000 [Doc. 31-2, pg. 32].

He valued the 7.58-acre transmission-line easement at $68,220 based on per acre value of $9,000 (7.58 x $9,000), and he valued the 0.115 acres permanent easement at $1,035 (0.115 x $9,000), for total value of $69,255 for the property taken. He also included $14,160 for timber damage and $5,120 for fencing damages.

He then determined the severance damages to the remainder. Mr. McSpadden again treated the 34.34-acre residential unit separately and used an "Easement Valuation Matrix," ("the Sherwood Matrix"), to assign a 10% diminution in value to that unit. He did not apply any diminution to the remainder of the property. That totaled damages in the amount of $298,072. [Doc. 35-1, pg. 39].

3

He then summed the value attributed to the transmission line easement, ($68,220), the permanent easement, ($1,035), the post-taking damage to the Baker's property, ($19,280), and the damages to the remainder ($298,072) to arrive at a total amount of $386,700 as his opinion of just compensation. *Id.*

The United States moved to exclude Mr. McSpadden's opinion under Federal Rules of Evidence 702 and 703 and *Daubert v. Merrell Dow Pharmaceuticals Corp.*, 509 U.S. 579 (1993). United States Magistrate Judge Cynthia R. Wyrick denied the motion, [Mem. Op. & Order, Doc. 47].

Pursuant to Federal Rule of Civil Procedure 72(a), the United States now timely objects to her decision, arguing that the Court should reverse the magistrate judge's ruling and exclude the opinion of Mr. McSpadden's report as irrelevant and unreliable. [United States's Mem., Doc. 54, at 1].

The United States raises three primary objections. First, it contends that the magistrate judge erred in concluding that Mr. McSpadden's opinion does not violate the "unit rule." Second, it argues that the opinion lacks sufficient support within the report and is otherwise unreliable. Third, it asserts that the opinion is based on a state-law summation methodology that renders it irrelevant in a federal condemnation proceeding.

## II.    STANDARD OF REVIEW

A federal magistrate judge has "broad discretion to regulate nondispositive matters." *Diorio v. TMI Hosp.*, No. 4:15-cv-1710, 2017 WL 1399869, at *2 (N.D. Ohio Apr. 19, 2017) (quotation omitted). When reviewing a magistrate judge's recommendation on a non-dispositive issue, the Court must accept it unless it is clearly erroneous or contrary to law. 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). This standard of review is "highly deferential" to the

magistrate judge's decision-making authority, *Diorio*, 2017 WL 1399869, at *2 (quotation omitted), and "[t]his standard requires the District Court to review findings of fact for clear error and to review matters of law de novo," *Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019) (quotation omitted).

A magistrate judge's findings of fact are "clearly erroneous when the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed," *Heights Cmty. Congress v. Hilltop Realty, Inc.*, 774 F.2d 135, 140 (6th Cir. 1985), and a magistrate judge's legal rulings are contrary to law when she either "fails to apply or misapplies relevant statutes, case law, or rules of procedure," *Bisig*, 940 F.3d at 219 (internal quotation marks and quotation omitted). The Court may "modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a).

## III.    ANALYSIS

Under the doctrine of eminent domain, the government may take private property for public use so long as it pays just compensation. *U.S. ex rel. Tenn. Valley Auth. v. 1.72 Acres of Land*, 821 F.3d 742, 752 (6th Cir. 2016). Just compensation requires that the landowner "be made whole" but that they are not entitled to more. *Id*. at 753 (quoting *Olson v. United States*, 292 U.S. 246, 255 (1934)). In a partial taking, the established measure of compensation is "the difference in fair market value of the whole tract before and after the taking." *Id*. at 756 (quoting *United States ex rel. TVA v. Easements & Rights-of-Way Over 6 Acres of Land*, 117 F. App'x 422, 423 (6th Cir. 2004)). This is often called the "before-and-after" method. *Id.*

Courts recognize two accepted ways of applying this method. *Instructions to Commissioners Under Rule 71a*, 61 F.R.D. 503, 516 (1974). The first values the property as a single economic unit before the taking and again after the taking, with just compensation equal to

the difference. *Id.* This approach captures all effects of the taking—both the value of the interest acquired and any diminution to the remainder—in a single calculation. The second approach isolates the affected portion of the property, values that portion before and after the taking, and then adds any "severance damages" to the remainder of the property. *Id.* at 513. Although the approaches are analytically distinct, both should, if properly applied, yield the same measure of just compensation.

Here, Mr. McSpadden divided the property into units (148.44 acres, 7.7 acres,[2] and 34.34 acres, plus the residence), assigned separate per-acre values to each, and applied a 10% diminution to only the 34.34-acre residential unit before aggregating those figures into total before- and after-taking values. [Doc. 31-2, pg. 39]. In substance, this reflects an application of the second approach rather than a whole-property valuation method, as described in the first approach.

The United States challenges Mr. McSpadden's use of a 10% diminution to derive his after-taking value. But the record reflects that this percentage is not untethered from market data. Mr. McSpadden cites land sales, published materials, and the Sherwood Matrix to support his opinion that similar takings may result in reductions in value, including reductions exceeding 10%. He also relies on his professional judgment in applying that percentage to the subject property. While this approach may be subject to critique, it provides a sufficient methodological basis to avoid wholesale exclusion under Rule 702.

The closer question is whether Mr. McSpadden's methodology violates the "unit rule." "The unit rule recognizes that while a landowner is entitled to have all factors affecting the value of the land considered, the owner is not entitled to have the factors added together and to have the total taken as the market value of the property." *United States v. 6.24 Acres of Land*, 99 F.3d 1140,

---

[2] This amount includes the 7.58 acres plus the 0.115 acres he included in his damages calculation. [Doc. 31-2, pg. 39].

6

1996 WL 607162, at *2 (6th Cir. 1996). This rule guards against double-counting, that is, the risk that separately valuing units of property (such as timber or minerals) and summing them will produce an amount exceeding the value of the property as a single, integrated whole.

That concern, however, is not implicated here. This case does not involve the valuation of distinct estates or separately owned interests, or discrete components (like timber or minerals) whose independent values are aggregated to produce a total market value. His opinion is directed at estimating severance damages to the remainder in a partial-taking context. In doing so, he reduces the remainder's value by 10%, but only as to the residential portion of the property—the 34.34-acre tract containing the residence—and assigns no impact to the remaining acreage. Although his presentation is not a model of clarity and could be read to suggest itemization and summation, his calculation sheet reflects a value to the property taken, damages to the remainder, and includes post-taking tort damages to the property.

This approach is not inconsistent with acceptable ways to reach just compensation. The United States acknowledges that there are two accepted ways of applying the "before-and-after" method to determine just compensation. The first compares the fair market value of the entire property before and after the taking. The second measures the value of the part taken and the damages or diminution in value to the remainder. Mr. McSpadden's analysis aligns with the latter approach. His calculations reflect severance damages to the remainder of $298,072, which represents post-taking loss, not the aggregation of separately valued interests. Even if aspects of his methodology could be characterized as imperfect or unclear, they do not constitute a clear violation of the unit rule warranting exclusion. This is particularly true in as much as there is no single way to measure just compensation. *United States v. Fuller*, 409 U.S. 488, 490 (1973) (stating that fair-market value is "not an absolute standard nor an exclusive method of valuation");

*United States v. 819.98 Acres of Land, More or Less*, 78 F.3d 1468, 1471 (10th Cir. 1996) ("[T]he law is not wedded to any particular formula or method for determining fair market value as the measure of just compensation.").

To be sure, Mr. McSpadden's report leaves room for criticism. Questions remain as to his selection of a 10% diminution rate, his decision to apply that rate only to a portion of the property, and the support for those conclusions. But those concerns go to the weight of his testimony, not its admissibility, and are appropriately tested through cross examination.

The Court reaches a different conclusion, however, with respect to Mr. McSpadden's inclusion of itemized damages for timber and fencing within the easement area. Defendants concede that these amounts were separately calculated and incorporated into his valuation. That approach conflicts with the before-and-after framework, which measures compensation by the diminution in market value of the property as a whole and does not include post-taking damages. By assigning separate dollar amounts to timber and fencing and adding them to his valuation, Mr. McSpadden risks double counting damages already reflected in the overall diminution in value of the property. And those damages are not independently tied to market valuation and do not reflect how a willing buyer and seller would assess the property. Accordingly, these opinions lack a reliable methodological foundation under Rule 702 and must be excluded.

For the same reasons, the magistrate judge's order must be modified to the extent that it permits the inclusion of post-taking damages in the just-compensation analysis. Just compensation is determined as of the date of the taking and does not include damages arising from post-taking conduct sounding in tort. Permitting the jury to consider such noncompensable damages would introduce irrelevant and potentially misleading evidence in violation of Rules 702 and 403.

8

**IV.    CONCLUSION**

For all these reasons, the United States's objections [Doc. 53] are **SUSTAINED IN PART and OVERRULED IN PART**.  The Court will not exclude Mr. McSpadden's opinion in its entirety, as his overall before-and-after valuation rests on a sufficiently reliable basis and does not violate the unit rule.  But the Court **EXCLUDES** his opinions to the extent that they incorporate itemized post-taking damages for timber and fencing under Rule 702.  The magistrate judge's order is therefore **MODIFIED** consistent with this opinion, and the case will proceed with Mr. McSpadden's testimony limited accordingly.

**SO ORDERED:**

s/ Clifton L. Corker
United States District Judge

9